Nov. Term, 1848.

HAMILTON
v.
SEAMAN.

---

## HAMILTON and Others *v.* SEAMAN and Another.

One of two joint makers of a note, by borrowing money to pay on such note, cannot render his co-joint debtor liable with him for the money borrowed.

When a dissolution has taken place, the one partner is not to be bound by

Nov. Term,
1848.

HAMILTON
v.
SEAMAN.

Wednesday,
November 29.

instruments negotiated by the other in the name of the original firm, after such dissolution, notwithstanding they are negotiated by the partner authorized to settle the partnership business.

APPEAL from the *Allen* Circuit Court.

PERKINS, J.—On the 18th of *July*, 1839, the State Bank of *Indiana* sued out of the clerk's office of the *Allen* Circuit Court, a writ of foreign attachment against *Henry J. Seaman* and *Nathaniel Norton*, as partners, under the name of *Seaman* and *Norton*. On the 21st of *September* following, *Allen Hamilton, Cyrus Taber*, and *Thomas Hamilton*, as partners, under the name of *Hamilton, Taber*, and *Co.*, filed a claim, under the attachment, against said *Seaman* and *Norton*, as partners, as aforesaid. That claim was for 488 dollars and 26 cents, due, as they alleged, by virtue of a draft drawn on the 8th of *November*, 1838, by said *Hamilton, Taber*, and *Co.*, in favor of *Dennison* and *York*, upon said *Seaman* and *Norton*, and by them accepted on the 17th of the same month, but which they failed to pay. A like, though in truth the same, sum was claimed for money paid, &c.

*Norton* appeared and pleaded the general issue, under oath, to the claim of *Hamilton, Taber*, and *Co.* The issue was tried by a jury, and found for the defendants. A new trial was denied, and judgment rendered upon the finding of the jury. The evidence is upon the record. It shows the following facts:

On the 20th of *December*, 1836, the defendants, *Seaman* and *Norton*, were partners in trade in the city of *New York*, and, as such, had a note, indorsed by *Bailey, Keeler*, and *Remsen*, discounted, for their own benefit, at the branch of our State Bank at *Fort Wayne*. On the 1st of *February*, 1837, they dissolved partnership, and, on the 3d of the same month, published, in the *New York* papers, the following notice thereof, and also inclosed copies of the same by mail to their correspondents, among whom were *Hamilton, Taber*, and *Co.*, and the Branch Bank at *Fort Wayne*:

"The co-partnership heretofore existing between the subscribers, under the firm of *Seaman* and *Norton*, is this

day dissolved by mutual consent. The business of the firm will be settled by *Henry J. Seaman*, who is hereby authorized to sign the name of the firm for that purpose.

*Nov. Term, 1848.*

HAMILTON
v.
SEAMAN.

"*Henry J. Seaman*,
"*Nathaniel Norton*."

On the 20th of *March*, 1837, the note discounted in bank was renewed by a note drawn by *Seaman*, in the name of *Seaman* and *Norton*, for 4,500 dollars. This was protested, and again renewed by *Seaman*, in the name of *Seaman* and *Norton*, for 3,600 dollars, on the 1st of *August*, 1837, and was, afterwards, quarterly or semi-annually, reduced and renewed in the same manner, till the 6th of *November*, 1838, when its amount was 2,600 dollars. At that date, being the day on which it was required to be again reduced and renewed, *Hamilton*, *Taber*, and *Co.*, having received a letter in the hand-writing of *Seaman*, signed *Seaman* and *Norton*, requesting them so to do, advanced 478 dollars and 68 cents on said renewal, and, to obtain re-payment, drew, as by said letter they were directed to do, on *Seaman* and *Norton*, at *New York*. The draft was accepted by *Seaman*, in the name of *Seaman* and *Norton*, but was not paid. This accepted draft was given in evidence as the foundation of the claim of *Hamilton*, *Taber*, and *Co.*, under the attachment. After the dissolution of the firm of *Seaman* and *Norton*, a partnership was formed under the name of *Norton* and *Co.*, in which *Norton* and one *Robinson* were the active partners, and *Seaman* a dormant one. This company occupied the same place of business as had been used by *Seaman* and *Norton;* and *Seaman* also continued there in settling up the business of the old firm, kept his books in the same safe with, and equally accessible to, *Norton* and *Co.*, and received there his notices of protests, &c. *Norton* and *Co.*, also, in some instances, advanced money to pay debts of *Seaman* and *Norton*, whose credit they were anxious to sustain. Such is the evidence upon the record.

It is claimed that the Court erred in refusing to grant a new trial. This leads us to consider as to the correct-

ness of the judgment upon the evidence. It is insisted that the plaintiffs were entitled to recover upon the acceptance against both *Seaman* and *Norton;* and if not upon that, then, that they should have recovered against them upon the common counts for money paid to their use. Could they recover upon the acceptance? As it was not actually signed by *Norton*, there could be no recovery upon it against him, unless *Seaman* was authorized, as to these plaintiffs, to place his (*Norton's*) name to it. *Seaman* was not authorized to so use *Norton's* name, by virtue of his power as partner, as that had been previously revoked by a dissolution of the firm, and notice thereof given to the plaintiffs. He was not authorized thus to use it by the power contained in the notice of the dissolution, as such power only enabled him to settle and receipt for dues to the firm, and to pay the debts it owed out of means he might possess, and not to contract new debts in the partnership name, even for the payment of old ones; Col. on Part. 492; and we do not think that the circumstances proved, viz., that *Seaman* kept his office, if we may so call it, for the settling up of the business of the extinct firm, in the store of *Norton* and *Co.*—that his notices of protests were left there—that his books were accessible to *Norton;* and that money was advanced by *Norton* and *Co.* for the payment of *Seaman* and *Norton's* debts, were sufficient to justify the jury in finding, over *Norton's* oath, that he did authorize the use made of his name made by *Seaman*. These facts were not at all incompatible with a different view of the subject, and tended, as we think, but very slightly to prove that *Norton* authorized *Seaman* to sign his name to an obligation to pay money. Could they recover on the count for money paid to the use of *Seaman* and *Norton?* It may well be doubted whether this money was paid upon a debt owed by those men. If *Seaman* had no power, after the dissolution, to renew the note in bank in the firm name, then, as the bank had notice of the dissolution, the note, though signed *Seaman* and *Norton*, was but the individual note of *Seaman*. And, on the dissolution of a

partnership, the note of one of its members may be given and received for a firm debt under such circumstances as to discharge those whose names are omitted. 1 Smith's L. C. 333. But we shall put this case upon a different ground. Admitting, for the sake of the argument, that the advancement made by the plaintiffs was upon a debt due from *Seaman* and *Norton*, still, as the partnership had terminated, the power of the partners individually to borrow money to pay said debt was but that of ordinary joint debtors. Can, then, one of two joint makers of a note borrow money to pay on such note, and thereby render his co-joint debtor liable with him for the money borrowed? We need not argue this question to show that he cannot. The money advanced by the plaintiffs in this case was, in reality, so borrowed by *Seaman*. It was obtained upon the special request contained in the letter mentioned in the evidence, written, after the cessation of the partnership, by *Seaman*, though signed *Seaman* and *Norton*. As the plaintiffs had notice, previously, of the dissolution of the firm, they were bound to know that, *prima facie*, *Norton's* name was wrongfully used, and he not bound by its use. The letter was to them, then, a simple request of *Seaman* to pay this money for *Seaman* and *Norton*. Admitting, therefore, that the payment accrued to *Norton's* benefit, still the plaintiffs could not recover, for money paid to his use, against him. They could not make him their debtor but upon his request; and the fact that the money in question was advanced upon the express request of *Seaman*, excludes the idea of an implied request by *Seaman* and *Norton* that otherwise might perhaps be entertained. We think the Court did not err in refusing to grant the new trial.

Holding the judgment below right upon the evidence, we shall not examine the instructions there given; for, should we regard them erroneous, we should not, for that reason, reverse a right judgment.

*Per Curiam.*—The judgment is affirmed with costs, &c.

*D. H. Colerick* and *J. G. Walpole*, for the appellants.

*F. P. Randall*, for the appellees.